**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAC A. FLEMING, GAIL A.
MEISEL, JOHN M. PESTA, and
ERNEST L. TORSKE,

      Plaintiffs,                            Case No. 08-11457

v.                                    Hon. Gerald E. Rosen

BROTHERHOOD OF THE MAINTENANCE OF WAY
EMPOYES DIVISION OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, and
BROTHERHOOD OF THE MAINTENANCE OF WAY
EMPLOYES DIVISION PENSION PLAN,

      Defendants.
_____/

**OPINION AND ORDER**
**AWARDING ATTORNEY FEES AND COSTS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 14, 2011 _____

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

Following the Court's award of summary judgment in Plaintiffs' favor on Count II

of the complaint, Plaintiffs filed the present motion, seeking an award of attorney fees and

costs under 29 U.S.C. § 1132(g)(1).  For the reasons set forth below, the Court finds that

Plaintiffs are entitled to the bulk of the fees and costs requested in their motion.

**I.**     **An Award of Attorney Fees Is Warranted in This Case.**

Under the pertinent provision of the  Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, this Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court recently held that a party is eligible for a fee award under this provision so long as the party achieves "some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Co.,* 130 S. Ct. 2149, 2159 (2010). In this case, there is no question that Plaintiffs have satisfied this standard, in light of the Court's observation in its summary judgment ruling that Plaintiffs "secured all of the relief sought in their complaint." (3/31/2010 Op. at 31.)

Accordingly, the Court turns next to the five factors identified by the Sixth Circuit as guiding the inquiry whether to award attorney fees under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Secretary of Department of Labor v. King,* 775 F.2d 666, 669 (6th Cir. 1985). "These factors are not statutory and typically not dispositive." *Moon v. Unum Provident Corp.,* 461 F.3d 639, 643 (6th Cir. 2006). Moreover, "[n]o single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Moon,* 461 F.3d at 642-43.

With regard to the degree of Defendants' culpability or bad faith, the Court finds that this factor favors an award of fees. As Plaintiffs note, culpable conduct is sufficient

2

to support a fee award, and the Court need not find that Defendants acted in bad faith. *See Hoover v. Provident Life & Accident Insurance Co.,* 290 F.3d 801, 809-10 (6th Cir. 2002).  In its summary judgment ruling, the Court observed that Defendants had identified essentially no authority in support of their challenge to Plaintiffs' claim under ERISA's so-called "anti-cutback" provision, 29 U.S.C. § 1054(g), leaving the Court largely to its own devices in fashioning arguments on Defendants' behalf.  (*See* 3/31/2010 Op. at 14-19.)  Thus, it cannot be said that Defendants offered a "reasoned explanation" for the recalculation and reduction of Plaintiffs' pension benefits, *see Moon,* 461 F.3d at 643, at least in the course of this litigation.

Rather than addressing the strength (or lack thereof) of their own position in this case, Defendants attempt to shift the focus to ***Plaintiffs'*** purported bad faith, both prior to and during this litigation.  Specifically, in their response to the present motion, Defendants suggest (i) that the current administrators of the Defendant Plan were confronted with a situation in which "the Plan had been improperly administered by prior Plan administrators," (ii) that this improper Plan administration was the apparent product of self-dealing by certain of the Plaintiffs, and (iii) that one of the Plaintiffs engaged in bad faith settlement negotiations during this suit.  (*See* Defendants' Response at 6-7.) Yet, it is not necessary to consider the legal significance of these claims of bad faith, because Defendants' charges against Plaintiffs rest solely upon the narrative of their counsel, unsupported by any citation whatsoever to any evidence in the record.  In any event, the Court found in its summary judgment ruling that the prior administrator's

3

interpretation of the Plan was not arbitrary and capricious, (*see* 3/31/2010 Op. at 24-26), and Plaintiffs cite without contradiction to the testimony of the Defendant Brotherhood's current president, Fred Simpson, that he did not believe Plaintiffs were "trying to line their pockets" in adopting this interpretation, (*see* Plaintiffs' Reply, Ex. 1, Simpson Dep. at 36-37).  Accordingly, the first *King* factor favors an award of attorney fees.

Next, regarding Defendants' ability to pay a fee award, Plaintiffs point to Defendants' own assertions in the brief in support of their summary judgment motion that the Defendant Plan maintained nearly $12 million in assets and that its funding problems were addressed prior to (and separately from) the decision to recalculate Plaintiffs' benefits.  (*See* Defendants' 5/26/2009 Motion, Br. in Support at 18 & n.1.)  Again, in response to this showing by Plaintiffs regarding their ability to pay, Defendants rely solely on their counsel's unsupported assertions that the Plan was "stressed" at one point in the past, and that it "remains in under funded position."  (Defendants' Response at 9.) Moreover, apart from the financial condition of the Plan, Plaintiffs' motion is accompanied by a report filed by the Defendant Brotherhood with the Department of Labor reflecting that it has net assets in excess of $45 million, and Defendants have not even attempted to rebut this showing in their response to Plaintiffs' motion.  This factor, therefore, favors an award of fees.

Next, the Court considers whether the ruling secured by Plaintiffs will serve as a deterrent to other plan fiduciaries or confer a benefit upon other plan participants.  While Defendants suggest that this case presented "unique circumstances," (Defendants'

4

Response at 9), the Court agrees with Plaintiffs that "[t]he basic issue in this case was not unique — whether a plan administrator may reinterpret the plan and then unilaterally reduce and recoup accrued pension benefits pursuant to that reinterpretation without violating ERISA's anti-cutback rules." (Plaintiffs' Reply at 4.)  Moreover, the Court's research revealed a fairly modest body of case law addressing ERISA's anti-cutback provision, so the ruling secured by Plaintiffs promises to inform future plan fiduciaries and beneficiaries of their rights and obligations under comparable circumstances.  This is particularly significant where, as Plaintiffs observe, pension benefit claims like those asserted here often involve fairly small amounts owed to each individual, providing less incentive to pursue costly litigation.  Finally, while the Court declined to rule on certain matters of Plan interpretation raised by Plaintiffs on the ground that they would benefit only other retirees, and not the parties before the Court, (*see* 3/31/2010 Op. at 31), Plaintiffs nonetheless point out that the Defendant Brotherhood has sent a letter to Plan participants promising to recalculate their benefits in accordance with the Court's ruling. (*See* Plaintiffs' Reply, Ex. 5.)  As a matter of brute fact, then, the result achieved by Plaintiffs here has conferred a benefit on other Plan participants, regardless of whether they were parties to this suit.

This leaves only the question of the relative merits of the parties' positions.  As discussed earlier, Defendants largely failed to identify any authority in support of their challenge to Plaintiffs' claims under ERISA's anti-cutback provision.  Accordingly, this fifth *King* factor, like the others, supports an award of attorney fees to Plaintiffs.

**II.    Plaintiffs Are Entitled to the Bulk of the Fees and Expenses Requested in Their Motion.**

Having determined that a fee award is appropriate here, the Court turns next to a determination of the proper amount of this award.  Plaintiffs request an award of $142,156.75 in attorney fees, with over $130,000 of this amount derived from the 437.9 hours worked by Plaintiffs' lead counsel, David Rhem, billed at a rate of $300 per hour.[1] In support of this request, Plaintiffs note that this case featured a fairly sizable administrative record, and entailed the review of documents and pension calculations for each of the several Plaintiffs.  Moreover, the parties engaged in significant discovery, particularly in comparison to the typical ERISA case, and Plaintiffs successfully challenged Defendants' assertions of attorney-client and work product privilege with respect to certain "pre-decisional" communications between the Plan administrator and counsel.  Further, counsel prepared and filed a summary judgment motion, through which Plaintiffs secured the entirety of the relief sought in their complaint.  Finally, Plaintiffs observe that the lodestar figure computed by multiplying the attorney hours expended times a reasonable hourly rate is presumptively a reasonable award.  *See Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401-02 (6th Cir. 1995).

Defendants challenge only certain aspects of Plaintiffs' fee request.  First, they fault one of the Plaintiffs for failing to participate in settlement negotiations, and they

---

[1]Mr. Rhem states that this is a discount from his standard rate of $340 per hour.

suggest that the fee award should be discounted accordingly.  As stated earlier, however, this charge of bad faith in the parties' settlement negotiations is wholly unsubstantiated by any evidence in the record.

Next, while Defendants acknowledge that it was appropriate to order at least some discovery in this case, they contend that the scope of this effort far exceeded what was necessary to address the issues of Plan interpretation and legal questions that ultimately determined the outcome here.  In addition, Defendants argue that Plaintiffs' fee award should not include any additional amounts expended in preparing and filing a single consolidated summary judgment motion in accordance with the Court's July 2, 2009 order.  The Court finds both of these points well taken, and will discount the fee award accordingly.  Moreover, the Court agrees with Defendants that Plaintiffs' request for an upward adjustment beyond the customary lodestar amount is unwarranted, where an award based upon a reasonable hourly rate times a reasonable number of hours is sufficient to provide an incentive for counsel to pursue claims like those at issue here, and to compensate Plaintiffs' counsel for the successful result achieved in this case.

Having considered the factors discussed above, the pertinent case law, and the record in this case, the Court finds that a 15 percent reduction in Plaintiffs' requested fee award is appropriate.  The bulk of this discount is intended to account for the amounts expended by Plaintiffs' counsel in a discovery process that was more extensive than warranted under the facts and governing law.  The remainder of this discount reflects the additional hours spent by Plaintiffs' counsel in complying with the Court's instruction to

7

file a single consolidated summary judgment motion.  Applying these reductions, the resulting fee award is $120,833.24.

Finally, Plaintiffs contend that this fee award should include $979.50 in travel and parking expenses, $2,403.04 in computer-assisted legal research costs, $59.98 in long distance telephone charges, $381.15 in copying charges, and a $160 court reporter fee. These items are non-taxable under the Court's Bill of Costs Handbook, but have nonetheless been deemed by other courts to be recoverable as part of a reasonable attorney fee, on the ground that they are necessary and proper to the practice of law and routinely billed to the client.  *See, e.g. Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.,* 262 F. Supp.2d 804, 817 (W.D. Mich. 2003), *vacated on other grounds,* 2004 WL 5389834 (6th Cir. Dec. 29, 2004). Defendants' only response on this point is that Plaintiffs "cite no authority" for the award of such expenses, (Defendants' Response at 13), a claim that is plainly refuted upon cursory review of Plaintiffs' motion, (*see* Plaintiffs' Motion, Br. in Support at 17-18 (citing authorities)).  Accordingly, the Court will include these additional amounts, totaling $3,983.67, in the fee award to Plaintiffs.

**III.    Conclusion**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' May 27, 2010 motion for attorney fees and costs (docket #56) is GRANTED, in accordance with the rulings in this opinion and order.  IT IS FURTHER ORDERED that Plaintiffs are

awarded, and Defendants are directed to pay, the sum of **$124,816.91** as a reasonable

attorney's fee under 29 U.S.C. § 1132(g)(1).

SO ORDERED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 14, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager